UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HUGH GIBBS TAYLOR, Jr.

                                    Plaintiff,

                    v.

TIMOTHY V. O'CONNOR, THE ARTIST BOOK
FOUNDATION, INC., LESLIE P. VAN BREEN

                                    Defendants.

**MEMORANDUM AND ORDER**

18-CV-01476 (LDH) (CLP)

LASHANN DEARCY HALL, United States District Judge:

Plaintiff Hugh Gibbs Taylor, Jr., brings the instant action against Defendants Timothy

O'Connor and Leslie Van Breen asserting a claim for tortious interference of contract under New

York State Law.[1]  On January 9, 2019, Plaintiff filed the operative complaint.  (Third Am.

Compl.[2] ("TAC"), ECF No. 53.)  On February 27, 2019, Magistrate Judge Pollak granted

Plaintiff limited discovery with respect to personal jurisdiction.  (ECF No. 64.)  On May 14,

2019, after an *in camera* review of Defendants' bank records, Magistrate Judge Pollak found that

the records did not support Plaintiff's claim of personal jurisdiction over Defendants in New

York, and thus Defendants did not need to produce the records to Plaintiff.  (ECF No. 83.)

Defendants now move pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil

Procedure to dismiss the complaint in its entirety for lack of jurisdiction and failure to state a

claim.

---

[1] The Artist Book Foundation (the "Foundation") is listed in the case caption and is listed as a defendant in the complaint.  (Third Am. Compl. ("TAC") ¶ 4, ECF No. 53.)  However, Plaintiff does not allege any cause of action against the Foundation, nor was the Foundation served the Third Amended Complaint.

[2] While the caption of ECF No. 53 is labeled "2nd Amended Complaint," it is in fact the third amended complaint. (*See* Compl., ECF No. 3 (document entitled "Summons with Notice" filed as a complaint); First Am. Compl., ECF No. 17; Sec. Am. Compl. ("SAC"), ECF. No. 27.)

# BACKGROUND[3]

Plaintiff is a resident of New York State.  (TAC ¶ 1.)  Defendant Van Breen is a resident of Vermont.  (TAC ¶ 2; Decl. Orla G. Thompson Supp. Defs.' Mot. Dismiss ("Thompson Decl."), ECF No. 89-1, Ex. B ¶ 4, ECF No. 89-3.)  Plaintiff and Defendant Van Breen co-founded The Artist Book Foundation (the "Foundation"), a non-profit organization that publishes art books.  (TAC ¶¶ 10–12.)  From 2012 through 2016, Plaintiff served as the Foundation's publisher.  (*Id.* ¶¶ 9, 14.)  Plaintiff resigned from the Foundation on November 6, 2016.  (*Id.* ¶ 24.)  Plaintiff alleges that in February 2017, Defendant O'Connor joined the Foundation as the organization's treasurer.  (*Id.* ¶ 25.)  Defendant O'Connor is a resident of Connecticut.  (*Id.* ¶ 3; Thompson Decl., Ex. C ¶ 4, ECF No. 89-4.)

On March 1, 2017, Plaintiff, on behalf of his company 501 Books, signed a publishing agreement (the "Agreement") with artist Kim Keever, who lived and worked in New York City.  (Thompson Decl., Ex. D ¶ 2, ECF No. 89-5, Ex. A, ECF No. 89-6.)  The Agreement provided 501 Books with the rights to sell a limited-edition book of Keever's work.  (*Id.*)  According to Plaintiff, Keever and his gallery planned to offer the book to their mailing lists, which included collectors of Keever's work, and Plaintiff spent eight months developing a marketing plan for the project.  (TAC ¶ 31–32.)  The terms of the Agreement, however, only required Keever to make a contribution of a limited number of signed prints to 501 Books.  (Thompson Decl., Ex. D-A.)  On the other hand, Plaintiff undertook a number of affirmative obligations, including assuming responsibility for marketing the limited edition book, by "undertak[ing] a targeted publicity program, [and] send[ing] out press releases and review copies of the book."  (*Id.*)

---

[3] The following facts are taken from the complaint and the parties' affidavits and exhibits.

Plaintiff alleges that in September 2017, Defendant O'Connor, with cooperation from Defendant Van Breen, contacted Keever and told Keever that Plaintiff had previously embezzled from the Foundation. (TAC ¶ 33.) Defendant O'Connor affirmed he received a phone call from Keever. (Thompson Decl., Ex. C ¶ 8.) Defendant O'Connor further affirmed that he was not in New York when he spoke to Keever by telephone, and had no idea where Keever was located. (*Id.*) Meanwhile, Defendant Van Breen states that she was unaware of the communication between Defendant O'Connor and Keever until after the phone call. (Thompson Decl., Ex. B ¶ 8.) According to Plaintiff, as a result of Defendant O'Connor's false statement, Keever and his gallery declined to market the limited-edition book as previously planned. (TAC ¶ 33.)

Defendants each affirmed that they do not own, use or maintain property in New York, conduct no personal business in New York, and do not derive any revenue from New York in their individual capacity.[4] (Thompson Decl., Ex. B ¶¶ 6–7; Ex. C ¶¶ 6–7.)

## STANDARD OF REVIEW

"In opposing a motion to dismiss for lack of personal jurisdiction, 'the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999)). To survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). A motion to dismiss under Rule 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings" and therefore "all pertinent documentation submitted by the parties may be considered in deciding the motion." *Yellow Page Sols., Inc. v.*

---

[4] Defendant O'Connor more specifically affirmed that he has not owned property in New York since 1997. (Thompson Decl., Ex. C ¶ 7.)

*Bell Atl. Yellow Pages Co.*, No. 00-CV-5663, 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001).  "Where the issue [of personal jurisdiction] is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."  *A. I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

## DISCUSSION

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state," and, "[i]f the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process" under the United States Constitution.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  In New York, Civil Practice Law and Rules ("CPLR") 301 and 302 provide for general and specific personal jurisdiction respectively, which the Court addresses in turn.

### A.  General Jurisdiction

Under CPLR 301, a "court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. § 301.  "The traditional bases of jurisdiction covered by this rule include physical presence, domicile, consent, and corporate presence by virtue of a defendant 'doing business' in New York."  *Patel v. Patel*, 497 F. Supp. 2d 419, 424 (E.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 301, 2001 Supplementary Practice Commentaries C301:2–C301:10).  If a defendant is found to be "doing business" in New York, the defendant is subject to general jurisdiction and may be sued in New York on any claim, "related or unrelated to the [defendant's] New York contacts."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).  Plaintiff maintains that jurisdiction is proper over Defendant O'Connor and Defendant Van Breen because each can be said to have been doing

4

business in New York to bring them within the reach of its courts.  (Pl.'s Opp. Mot. Dismiss ("Pl.'s Opp.") 3, ECF No. 90.)  Plaintiff is wrong.

To establish that the "doing business" standard is met, "a plaintiff must show that a defendant engaged in continuous, permanent, and substantial activity in New York."  *Wiwa*, 226 F.3d at 95.  Factors relevant to this determination include "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York."  *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).  Of particular relevance here, the "doing business test applies to a nonresident individual only where the individual is 'doing business' in New York personally and not on behalf of a corporation."  *Patel*, 497 F. Supp.2d at 425.  That is, "[a]lthough a corporation can act only through an employee or agent, the employee or agent being a live rather than a fictional being can act on behalf of himself or his employer or principal.  He does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually."  *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (N.Y. 1982); *see also Giuliano v. Barch*, No. 16-CV-0859, 2017 WL 1234042, at *6 (S.D.N.Y. Mar. 31, 2017).  It is on this point that Plaintiff's general jurisdiction argument fails.

Plaintiff alleges that Defendant Van Breen conducted business in New York "on more than 400 occasions" and that she was a co-signor of a Capital One Bank account located in New York.  (TAC ¶¶ 14, 23.)  Yet, even as alleged, Defendant Van Breen's contacts with New York were all on behalf of the Foundation, *i.e.*, conducting the Foundation's banking, planning and attending the Foundation's fundraising events, and attending Foundation board meetings.  (*See id.*)  Defendant Van Breen affirmed that she does not and never has owned, used or maintained

any property in New York, she has never conducted business in New York in an individual

capacity, and she does not derive revenue from New York in her individual capacity.

(Thompson Decl., Ex. B ¶¶ 6–7.)

Defendant O'Connor affirmed that he is not domiciled in New York, and his contacts

with the state arise from personal travel or in his capacity as a Foundation board member. (*Id.*,

Ex. C ¶ 6.) He further affirmed that he has not owned, used, or maintained any property in New

York since 1997, and does not derive any revenue from New York in his individual capacity.

(*Id.*, Ex. C ¶¶ 6–7.) Plaintiff alleges a one-time communication between Defendant O'Connor

and Keever, who resided in New York, which forms the basis for his tortious interference claim.

(*See* TAC ¶¶ 31, 33.) Defendant O'Connor affirmed that he spoke to Keever to "to ensure that

[Plaintiff] . . . was not holding himself out to the public that he was still involved in any way

with the Foundation." (Thompson Decl., Ex. C ¶¶ 6–7.) Thus, Defendant O'Connor's

communication with Keever was on behalf of the Foundation. Plaintiff has alleged no facts

which indicate that Defendant O'Connor was "doing business" in an individual capacity in New

York. *See Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*, No. 13-CV-4588,

2014 WL 772215, at *5 (S.D.N.Y. Feb. 21, 2014) (finding that the court could not exercise

jurisdiction pursuant to CPLR 301 over out-of-state Defendant who did no business in his

individual capacity in New York and did "negligible" business on behalf of his company in New

York). And even if the phone call was somehow related to Defendant O'Connor's personal

business in New York, one phone call would not constitute continuous, permanent and

substantial activity in New York. *See Patel*, 497 F. Supp.2d at 425 (E.D.N.Y. 2007) (collecting

cases to support the proposition that the "doing business" test was not met where defendant sent

billing statements to and had telephone conversations with one of the plaintiffs in New York;

received funds from the plaintiffs and their limited liability companies; and sent two emails to one of the plaintiffs.)

Simply put, there is no jurisdiction over either Defendant Van Breen or Defendant O'Connor under CPLR 301.

### B.  Specific Jurisdiction

Plaintiff's efforts to establish specific jurisdiction over Defendants are equally futile. Plaintiff alleges that Defendants committed a tortious act against him.  (TAC ¶¶ 37–44.)  Based on his allegations, only two provisions of CPLR that provide for specific jurisdiction are potentially implicated—CPLR 302(a)(2) and (a)(3).[5]  However, both provisions "explicitly exempt causes of action for the tort of defamation from their scope."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244–45 (2d Cir. 2007).  At bottom, Plaintiff's claims amount to a claim for defamation.  Throughout his complaint, Plaintiff alleges repeatedly that his injury stems from a false statement by Defendants that Plaintiff had embezzled funds from the Foundation.  (TAC ¶¶ 21–22, 33, 40.)  Tellingly, Plaintiff's second amended complaint included a cause of action for this purportedly defamatory statement.  (*See* SAC, ¶¶ 49–53.)  That Plaintiff has dropped the express claim for defamation is of no consequence.  (*Compare id. with* TAC.)

---

[5] There are four provisions of CLPR 302(a).  *See* N.Y. C.P.L.R §§ 302(a)(1)–(4).  Plaintiff argues that CLPR 302(a)(1) supplies jurisdiction here.  (Pl.'s Opp. 4.)  Not so.  A court may exercise jurisdiction under CPLR 302(a)(1) if a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state."  *Id.* § 302(a)(1).  CLPR 302(a)(1) is not applicable because the alleged in-state conduct consisted of one telephone call between Keever—who is based in New York—and Defendant O'Connor, who spoke to Keever while outside of New York.  (Thompson Decl., Ex. C ¶ 8.)  Telephone conversations are not sufficient to sustain New York's long arm jurisdiction under CLPR 302(a)(1) unless "they are used by the defendant to actively participate in business transactions in New York."  *Andy Stroud, Inc. v. Brown*, No. 08-CV-8246, 2009 WL 539863, at *4 (S.D.N.Y. Mar. 4, 2009) (citing *Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y.  1996)); *see also Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839, 2015 WL 5751252, at *4 (S.D.N.Y. Sept. 30, 2015) (collecting cases). Furthermore, Plaintiff has not argued or alleged that Defendants own, use or possess any real property within the state, and thus there is no potential basis for jurisdiction under CLPR 302(a)(4).  (*See*, *generally*, TAC; Pl.'s Opp.)

"Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation." *Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996). Even claims that merely "sound in defamation" are excluded from the ambit of claims that may be properly brought pursuant jurisdiction established under CPLR 302(a)(2) and (a)(3). *G31000 N. Am., Inc. v. Paris*, No. 14-CV-3885, 2014 WL 6604790, at *2–3 (S.D.N.Y. Nov. 21, 2014) (citing *Cantor Fitzgerald*, 88 F.3d at 157). Importantly, "to determine whether a plaintiff's claim sounds in defamation, courts must look to the substance, not merely the name of a claim." *Mount Whitney Investments, LLLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15-CV-4479, 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted) (collecting S.D.N.Y. cases). Thus, while Plaintiff has now cast his claims for relief only in terms of tortious interference, his claim is based on the alleged defamatory statements, and neither CPLR 302(a)(2) nor (a)(3) can serve to supply a basis for personal jurisdiction. *Cantor Fitzgerald*, 88 F.3d at 157 ("Plaintiffs' additional claim[] of tortious interference [] likewise do[es] not independently establish personal jurisdiction under subparagraphs (2) and (3) because the entire complaint sounds in defamation.").

Even if Plaintiff's claim did not "sound in defamation," Plaintiff would not be able to establish jurisdiction under CPLR 302(a)(2) or (a)(3). With respect to CPLR 302(a)(2), a prerequisite to jurisdiction is the "defendant's physical presence in New York." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir.1997)). This prerequisite has not been met in this case. Again, Plaintiff's allegations undermine any claim to jurisdiction here. Plaintiff has not alleged that either Defendant was in New York at the time they allegedly "cooperated" to make the false statement, which allegedly resulted in the tortuous interference. Likewise,

8

Defendant O'Connor is not alleged to have been in New York when he contacted Keever in 2017.  Indeed, Defendant O'Connor has submitted a sworn declaration that expressly states that he was not in New York at the time of the call.  (Thompson Decl., Ex. C ¶ 8.)

CPLR 302(a)(3) is similarly of no help to Plaintiff.  Under subsection (i), Plaintiff would need to established that each Defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state[.]"  N.Y. C.P.L.R. § 302(a)(3)(i).  Plaintiff has made no attempt to do so.  The complaint contains no allegations that either Defendant did business in New York in their individual capacity.  (*See, generally*, TAC.)  And in his opposition, Plaintiff merely conclusively and incredulously asserts, without evidence, that the facts are what he says they are.  That is, "O'Connor has transacted extensive business both within the state and to supply services in the state."  (Pl.'s Opp. 4.)  And "[b]y definition, the vast majority if not all of [Defendant Van Breen's 400+ meetings in New York] involved matters related materially to the tortious interference alleged in the Second Amended Complaint."  (*Id.* 3–4.)  Plaintiff's bare assertions are outweighed by the sworn affidavits from Defendants.  As the Court has already found, there is no basis to conclude that either Defendant regularly did business in New York in their individual capacity.

Plaintiff's last hope for jurisdiction is CPLR 302(a)(3)(ii), under which

> a plaintiff is required to demonstrate that (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir.), *certified question accepted*, 15 N.Y.3d 744, 933 N.E.2d 205 (2010), *and certified question answered,* 16 N.Y.3d

295, 946 N.E.2d 159 (2011). Under New York law, the elements of a tortious interference with contract claim are: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001). Plaintiff has failed to allege breach of contract.

Plaintiff alleges that as a result of Defendant O'Connor's allegedly false statement, Keever "decided not to market the limited-edition book as had been planned," which constituted a breach of the business contract between Plaintiff and Keever. (TAC ¶¶ 33, 43.) The Agreement, however, only required that Keever "make a contribution to 501 of a limited edition of signed prints." (Thompson Decl., Ex. D-A.) Plaintiff does not state the date that Plaintiff requested the prints. (*See* TAC.) He does not state the date that Keever failed to provide the prints to Plaintiff. (*Id.*) He does not state that Keever ever indicated to him that Keever intended not to perform. (*Id.*) Importantly, according to Plaintiff, the breach at issue was the failure by Keever to market the limited-edition book. (TAC ¶ 33.) However, by its terms, that obligation was born by Plaintiff, not Keever. (Thompson Decl., Ex. D-A at 1 ("501 [Plaintiff's Company] will undertake a targeted publicity program, sending out press releases and review copies of the book.").) Because Plaintiff has not alleged any breach of contract, the Court has no jurisdiction over Defendants under CPLR 302(a)(3)(ii).[6]

Plaintiff has failed to meet his burden of establishing that the Court has jurisdiction over each Defendant. Because the Court lacks personal jurisdiction over each Defendant, the Court need not examine whether jurisdiction would comport with due process. *See Penguin Grp.*

---

[6] For these reasons, even if the Court had personal jurisdiction over Defendants, the Court would find the allegations insufficient to state a claim for tortious interference with contract. Having no personal jurisdiction over Defendants, however, the Court makes no findings with respect to Defendants' motion to dismiss under Rule 12(b)(6).

*(USA) Inc.*, 609 F.3d at 35 ("Except where the long-arm statute permits jurisdiction to the extent permitted by principles of Due Process—as it commonly does in states other than New York—analysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute."); *see also Leviton Mfg. Co. v. Reeve*, 942 F. Supp.2d 244, 263 (E.D.N.Y. 2013) ("The Court finds that personal jurisdiction over the Attorney Defendants cannot be exercised under New York's long-arm statute. Therefore, the Court need not address the issue of whether the exercise of jurisdiction in the instant case comports with the requirements of due process.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.  Plaintiff's complaint is dismissed in its entirety without prejudice to renew in a jurisdiction where personal jurisdiction over Defendants could be obtained.

SO ORDERED.

Dated:  Brooklyn, New York
     March 31, 2020

/s/ LDH            
LaSHANN DeARCY HALL
United States District Judge

11